Sherman BOLING, Manford Carter, Elvin Mayfield, Carl D. Moody, Leroy Olson, Robert Shambles, Individually and as Members of a Class, Plaintiffs,

v.

NATIONAL ZINC COMPANY, a corporation, State Insurance Fund, State of Oklahoma, Chris Sturm, Commissioner, Chris Sturm, an Individual, John S. Van Aken, an Individual, Jack L. Truman, an Individual, Melvin E. McCluskey, an Individual, and Thomas L. Vogt, an Individual, Defendants.

No. 75–C–365–C.

United States District Court,
N. D. Oklahoma.

Dec. 30, 1976.

Eddie Harper, Gene Stipe, John B. Estes, Stipe, Gossett, Stipe & Harper, Oklahoma City, Okl., for plaintiffs.

Ben L. Burdick, Oklahoma City, Okl., Melvin D. Kraft, P. C., New York City, for Nat. Zinc, Van Aken, Truman, McCluskey.

James D. Fellers, Rand R. Guffey, Fellers, Snider, Blankenship & Bailey, Oklahoma City, Okl., for Sturm & State Ins.

Carl D. Hall, Jr., Hall & Sublett, Tulsa, Okl., for defendant.

### ORDER SUSTAINING MOTION FOR SUMMARY JUDGMENT

COOK, District Judge.

This case is before the Court on the Motion for Summary Judgment on Behalf of National Zinc Company, John S. Van Aken, Jack L. Truman, Melvin E. McCluskey and Thomas L. Vogt and The Motion of Defendants, State Insurance Fund and Chris Sturm, to Dismiss, or in the Alternative for Summary Judgment.

The Complaint alleges that the named plaintiffs and all other members of the class which they represent and which is designated as the past, present and future employees of the defendant, National Zinc Company, (hereinafter "Zinc") have been deprived of their civil rights guaranteed by the constitutions and statutes of the United States and the State of Oklahoma. More specifically, the named plaintiffs allege that they were employees of the defendant, Zinc, at its plant in Bartlesville, Washington County, Oklahoma, when on July 15, 1975, the defendants met in Tulsa, Oklahoma, for the purpose of conspiring to terminate any employee of Zinc who received an Order of Award from the State Industrial Court of the State of Oklahoma in violation of Title 42 U.S.C. § 1985 (1974). The named plaintiffs charge that on or about July 17, 1975, they were discharged from employment by Zinc in furtherance of the unlawful conspiracy. The Complaint alleges that the conspiracy was designed to deny, impair, divest, abridge and otherwise interfere with the rights of the class to due process, equal protection and equal privileges and immunities protected by the constitutions and statutes of the United States and the State of Oklahoma in that defendants' actions intimidated and threatened them with termination if they exercised their right to prosecute a claim before the Oklahoma State Industrial Court against Zinc.

Defendant Chris Sturm is the Commissioner of the State Insurance Fund. Defendants Van Aken, Truman, McCluskey and Vogt are officers of defendant Zinc.

Plaintiffs assert that this action arises under Title 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988 (1974) and Title 18 U.S.C. § 241 (1969). See Plaintiffs' Response to Defendants' Motion for Summary Judgment filed Oct. 21, 1975, unnumbered p. 4. Title 28 U.S.C. § 1343 (1962) grants original jurisdiction to the district courts over actions arising out of a "deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens" or over actions resulting from acts "done in furtherance of any conspiracy mentioned in section 1985 of Title 42".

On July 2, 1976, the Court held a hearing on the pending Motions wherein each of the parties was given an opportunity to present arguments and evidence in support or in opposition to the Motions. The parties have submitted Post-Oral Argument Briefs. The Court has perused the entire file and is fully advised in the premises.

Plaintiffs' basic contention is that the defendants have conspired to deprive them of their right to prosecute lawful workmen's compensation claims before the State Industrial Court of the State of Oklahoma.

They allege that the defendants agreed to terminate from employment any employee of defendant Zinc who submitted a workman's compensation claim to the State Industrial Court.

■ The right to petition the government to redress grievances is a right guaranteed by the first amendment to the Constitution of the United States.[1] *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875). Access to the courts of the United States is a constitutional right guaranteed by the due process clauses of the fifth and fourteenth amendments. *Silver v. Cormier*, 529 F.2d 161 (10th Cir. 1976). The federal constitutional right of access to the courts includes access to all courts, both state and federal. *Hooks v. Wainwright*, 352 F.Supp. 163 (M.D.Fla.1972).

■ It is clear that the cases which have interpreted § 1981[2] have required that a claim based on this statute be founded on racial discrimination. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as applied in § 1981, *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974); *Sabol v. Snyder*, 524 F.2d 1009 (10th Cir. 1975); *Baca v. Butz*, 394 F.Supp. 888 (D.N.M.1975). No claim of racial discrimination is presented in the Complaint or in the plaintiffs' briefs. As to any action based on § 1981 the Complaint is dismissed on the ground that the Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) of the Fed.R.Civ.P.

Plaintiffs have alleged that their claim for relief is based in part on Title 42 U.S.C. § 1983.[3] Defendants Chris Sturm and the State Industrial Fund argue that the Court lacks subject matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted under § 1983. "The statutory prerequisites to liability under 42 U.S.C. § 1983 are: (1) that the defendant act 'under color of' state or local law, and (2) that the plaintiff be subjected to a 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws." (Citations Omitted). *Stringer v. Dilger*, 313 F.2d 536, 540 (10th Cir. 1963). See *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Marland v. Heyse*, 315 F.2d 312 (10th Cir. 1963).

The question arises as to whether the defendant, Chris Sturm, as Commissioner of the State Insurance Fund, could be held to have acted under color of state or local law in participating in the alleged deprivation of plaintiffs' right to petition the State Industrial Court for a redress of a grievance. Whether particular conduct is private or amounts to "state action" presents a question with no easy answer. The solution lies in sifting facts and weighing circumstances. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). See *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972). In the case of *Jackson v. Statler Foundation*, 496 F.2d 623, 629 (2nd Cir. 1973) the court found that a

"review of the 'state action' case law suggests five factors which are particularly important to a determination of 'state action': (1) the degree to which the 'private' organization is dependent on

---

1. First Amendment to the United States Constitution.

   Congress shall make no law respecting . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

2. § 1981. Equal rights under the law.

   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

3. § 1983. Civil action for deprivation of rights.

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

governmental aid; (2) the extent and intrusiveness of the governmental regulatory scheme; (3) whether that scheme connotes government approval of the activity or whether the assistance is merely provided to all without such connotation; (4) the extent to which the organization serves a public function or acts as a surrogate for the State; (5) whether the organization has legitimate claims to recognition as a 'private' organization in associational or other constitutional terms.

Each of these factors is material; no one factor is conclusive."

The State Insurance Fund is a creature of the legislature of the State of Oklahoma. Title 85 Okla.Stat. § 131 (Amended 1972).[4] The purpose of the fund is to provide insurance coverage for employers against liability for workmen's compensation. While the State Treasurer is the custodian of the money deposited, Title 85 Okla.Stat. § 135, the funds deposited in the State Insurance Fund do not belong to the State of Oklahoma. *Moran v. State ex rel. Derryberry*, 534 P.2d 1282 (Okl.1975). The Commissioner is appointed by the Board of Managers of the State Insurance Fund. Title 85 Okla.Stat. § 131b (1970). The Governor of the State of Oklahoma is a member and chairman of the Board of Managers. Title 85 Okla.Stat. § 131a. The Commissioner is granted broad powers to manage and to conduct the affairs of the Fund. Title 85 Okla.Stat.

§§ 132, 133. The Commissioner may act as fully and completely as a governing body of a private insurance carrier.

The Fund acts as a private insurer which is self-supporting and which acts in competition with other insurance carriers. The Fund must be self-supporting. 85 Okla. Stat. § 131(c).

The Fund is supported by premiums received and operates solely for the benefit of workmen injured through employment. The State assumes no liability beyond the amount of the Fund. The governmental regulation is similar to that of a private insurance carrier. 36 Okla.Stat. § 101 et seq. The Fund competes with private carriers and operates under the statutory requirement that it be self-supporting.

Monopoly status and heavy regulation by the State do not in themselves comprise "state action". Regulated businesses which provide goods and services which are affected with a public interest do not necessarily convert their actions into those of the State. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); See *Teleco, Inc., v. Southwestern Bell Telephone Co.*, 511 F.2d 949 (10th Cir. 1975).

In considering all of these factors, it is the conclusion of the Court that the State of Oklahoma does not stand in a sufficient-

---

4. § 131. Creation of fund—Purpose—Character and contents—Use

There is hereby created and established a fund to be known as "The State Insurance Fund", to be administered by the State Insurance Fund Commissioner, without liability on the part of the state beyond the amount of said Fund, for the purpose of insuring employers against liability for compensation under Sections 131 through 151 of this title, and for assuring for the persons entitled thereto compensation provided by the Workmen's Compensation Law, and for the further purpose of insuring persons, firms and corporations against loss, expense or liability by reason of bodily injury, death by accident, occupational disability, or occupational disease suffered by employees, for which the insured may be liable or have assumed liability. Said Fund may further provide insurance for employers against liability incurred as the result of injuries sustained by employees engaged

in employment subject to the Longshoremen's and Harbor Workers' Compensation Act as enacted or as may be amended by the Congress of the United States.

(a) The State Insurance Fund shall be a revolving fund and shall consist of all premiums received and paid into said Fund for insurance issued, all property and securities acquired by and through the use of moneys belonging to the Fund and all interest earned upon moneys belonging to the Fund and deposited or invested as herein provided.

(b) Said Fund shall be applicable to the payment of losses sustained on account of insurance and to the payment of expenses in the manner provided in Sections 131 through 151 of this title.

(c) Said Fund shall be fairly competitive with other insurance carriers and it is the intent of the Legislature that said Fund shall become neither more nor less than self-supporting.

ly close nexus to the actions of Chris Sturm, as Commissioner and therefore to the State Insurance Fund to constitute "state action" as required in § 1983.

The defendant Sturm argues that he has no authority to discharge employees of defendant Zinc. The Court has considered the case of *Silver v. Cormier*, supra, where the Tenth Circuit found that a threat by a state official to withhold monies due and owing if a citizen should institute legal proceedings on an independent matter, burdens or chills constitutional rights of access to the courts even though the threat is not actually effective. Because of the Court's holding that no state action has been shown as required by § 1983 the Court concludes that the teaching of *Silver v. Cormier*, supra, does not apply to the facts of this case and needs no further examination.

■ The defendant, State Insurance Fund, argues that it must be dismissed as a party to this suit because it is not a "person" as defined by § 1983. This Court holds that the State Insurance Fund is not in a sufficiently close nexus with the State of Oklahoma so that its actions constitute state action. However, if such a finding is not true, the State Insurance Fund is not a "person" within the meaning of § 1983 and must be dismissed. See *Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir. 1974); *Cheramie v. Tucker*, 493 F.2d 586 (5th Cir. 1974); *Bennett v. People*, 406 F.2d 36 (9th Cir. 1969); *Taliaferro v. State Council of Higher Education*, 372 F.Supp. 1378 (E.D.Va.1974).

Therefore, as to the claims raised under Title 42 U.S.C. § 1983 the plaintiffs have failed to state a claim upon which relief can be granted. Pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. the causes raised under § 1983 are dismissed.

Both defendants, Chris Sturm and the State Insurance Fund assert that the Complaint fails to establish subject matter jurisdiction in this Court over the action alleging a violation of Title 42 U.S.C. § 1985(3).[5] These defendants further assert that the Complaint fails to state a claim upon which relief can be granted under § 1985(3) since it does not state facts to show that the alleged overt acts of defendants were motivated by a class-based invidiously discriminatory animus. On its face the Complaint alleges facts which give rise to an action founded on § 1985(3).

Section 1985(3) requires that a conspiracy must be entered into by "persons". The conclusion of the Court that the State Insurance Fund is not a "person" under § 1983 applies to plaintiffs' action under § 1985. Therefore as to the State Insurance Fund the Motion to Dismiss for failure to state a claim upon which relief can be granted under § 1985(3) is sustained.

All of the defendants have moved for Summary Judgment. The Complaint alleges that the defendants have conspired "to intimidate, threaten or otherwise scare and force plaintiffs, and other members of their class, into refusing to prosecute their pending claims before the Oklahoma State Industrial Court . . ." by discharging plaintiffs and members of the class who have or will file such claims. (See Complaint p. 3). An element of a cause of action under § 1985(3) is that there "must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus be-

---

**5.** § 1985(3) states in pertinent part:

Depriving persons of rights or privileges

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such

State or Territory the equal protection of the laws; . . ., in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

hind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

■ The facts fail to show that the plaintiffs are persons who as individuals or members of a class come within the congressional purpose of § 1985(3) as is alleged in the Complaint.

"That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin* at 101, 91 S.Ct. at 1798.

There exists no indication that the alleged conspiracy was directed against the plaintiffs because of "some racial, or otherwise class-based invidiously discriminatory animus." The Court is aware that class-based invidiously discriminatory animus is not confined to racial bias. *Ward v. St. Anthony Hospital*, 476 F.2d 671 (10th Cir. 1973); *Arnold v. Tiffany*, 487 F.2d 216 (9th Cir. 1973) cert. denied 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed. 881 (1974). However, the facts that have been developed from the pleadings and affidavits contained in the record show that these named plaintiffs were employees of defendant Zinc who had filed a claim with the State Industrial Court of Oklahoma for workmen's compensation, and that each had received a permanent disability award prior to termination by defendant Zinc. Each of the named plaintiffs filed a grievance pursuant to Article 2 of the collective bargaining agreement alleging wrongful termination. These grievances were denied on July 22, 1975. Subsequently each of the named plaintiffs submitted his grievance to an arbitration panel. The Court has been notified by letter of November 15, 1976, that pursuant to a Strike Settlement Agreement each of the named plaintiffs has been either reinstated or offered reinstatement with full seniority and back pay. The Court has been further notified that a new collective bargaining agreement has been entered into between defendant Zinc and the Oil, Chemical and Atomic Workers International Union and its Local 5–401 of which the plaintiffs are members which provides for the arbitration of any dispute concerning the ability of an employee to continue in his job without aggravating an existing injury.

The facts are undisputed that these named plaintiffs were not prevented from petitioning the Industrial Court. The facts further show that the basis of the plaintiffs' grievance is over a labor dispute which is properly the subject matter of a collective bargaining agreement and the procedures of arbitration. *Republic Steel v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *United Steel Workers of Am. v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Satterwhite v. United Parcel Service*, 496 F.2d 448 (10th Cir. 1974).

As the facts are presented no serious contention can be made that these plaintiffs are members of a class against which an invidiously discriminatory animus can be shown. These plaintiffs were not discharged because of their association with an unpopular religious sect, because of race or because of political affiliations. It .is alleged that these employees were originally terminated because they filed with and received an award from the State Industrial Court. Plaintiffs have failed to provide minimum support for their theory that this class of employees comes within a group against which an invidiously discriminatory animus may be shown. Therefore the claims of plaintiffs brought pursuant to 42 U.S.C. § 1985 are dismissed for failure to state a claim upon which relief can be granted.

Title 42 U.S.C. §§ 1986, 1988 are supplementary to Title 42 U.S.C. § 1985. Since the Court has determined that plaintiffs have failed to state a cause of action under § 1985 the claims brought under §§ 1986 and 1988 must be similarly dismissed.

In regard to Title 18 U.S.C. § 241 the plaintiffs state that this statute is raised only in that if there have been any criminal violations, such violations would grant a right to civil redress. Plaintiffs state that they are not charging defendants with a criminal violation. (See Response to De-

fendants' Motion for Summary Judgment filed October 21, 1975, unnumbered page 9). Since plaintiffs have not alleged a criminal violation the Motion to Dismiss the action under Title 18 U.S.C. § 241 is sustained.

Under Rule 12(b)(6) of the Fed.R.Civ.P. where matters outside the pleading are presented to and not excluded by the court, the Motion to Dismiss for failure to state a claim upon which relief can be granted shall be treated as one for summary judgment under Rule 56.

Accordingly, for the reasons stated herein:

IT IS ORDERED, ADJUDGED, AND DECREED that summary judgment be entered in favor of the defendants, National Zinc Company, State Insurance Fund, Chris Sturm individually and as Commissioner of the State Insurance Fund, John S. Van Aken, Jack L. Truman, Melvin E. McCluskey and Thomas L. Vogt and against the plaintiffs on the Complaint.

It is so Ordered this 30th day of December, 1976.